IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CATHERINE ROMERO HARVEY,

      Plaintiff,

vs.                                                                  CIVIL NO. 00-32 RLP/LFG

FRANKLIN INDUSTRIES, INC.,
d/b/a Franklin Industrial Minerals,

      Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER having come before the court on Defendant Franklin Industries, Inc.'s Motion for Summary Judgment **(Docket No. 29)**, the court having read the motion and the memoranda in support of and in opposition to the motion and otherwise being fully advised, finds that the motion is well taken and will be **granted.**

## STATEMENT OF FACTS

Plaintiff was hired in 1994 as a safety and purchasing coordinator for the Defendant. The parties agree that all crucial events relating to Plaintiff's complaint took place on April 24, 1998. On April 24, 1998, Plaintiff received a telephone call from an official at the New Mexico Air Quality Bureau regarding Defendant's mining permit. Plaintiff informed the official that she could not answer his questions, but that she would forward the questions to her supervisor for response. Plaintiff did not give the New Mexico Air Quality Bureau

any information during the telephone call.[1]

After the April 24, 1998 telephone call from the New Mexico Air Quality Bureau official, Plaintiff's supervisor called her back and was angry with her. Plaintiff's supervisor communicated information that was hurtful to Plaintiff and specifically told her she was "stupid and incompetent". Later that day, Plaintiff and her supervisor had another telephone conversation and there was also an exchange of e-mail between Plaintiff and her supervisor. After Plaintiff read the e-mail, she claims she suffered adverse physical symptoms, in that her arm and leg went numb and her face twisted. Later that evening, Plaintiff went to the hospital with complaints of numbness, nausea and a tight chest. Plaintiff was discharged that evening from the hospital.

Since April 24, 1998, Plaintiff claims she has been totally disabled from working and accordingly did not return to work or seek any other employment. Plaintiff claims she continues to be totally disabled from working. Plaintiff's primary care physician has testified there has not been any period of time between April 24, 1998 and the present during which Plaintiff could work in any position. Plaintiff has not provided to Defendant a doctor's note stating that she was able to return to work, nor did she ever tell anyone that she was capable of performing her job duties. Defendant's Policies and Procedures Manual and the Team Member Handbook establish that both documents do not explicitly

---

[1]Plaintiff disputes this assertion to the extent that it might be interpreted that Defendant believed Plaintiff gave no information to the New Mexico Air Quality Bureau representative. However, Plaintiff does not dispute the fact that she did not give information to the Air Quality Bureau representative.

**2**

create an employment contract. Further, Plaintiff signed an acknowledgment of her receipt of the Team Member Handbook on August 16, 1994 that her employment was terminable at will and that no representative of the company would have authority to make a contrary agreement with her.[2]

## DISCUSSION

Summary judgment is appropriate only in cases where, looking at the facts in the light most favorable to the non-moving party, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986); *Handy v. Price,* 996 F.2d 1064, 1066 (10th Cir. 1993); Fed.R.Civ.P. 56. The movant bears the burden of establishing that no genuine issue exists as to any material fact. *National Union Fire Ins. Co. v. Emhart Corp.,* 11 F.3d 1524, 1528 (10th Cir. 1993). This burden may be discharged by showing there is an absence of evidence to support the non-moving party's case. *Celotex.*

---

[2]D.N.M.LR-Civ. 56(b), provides as follows: "A memorandum in opposition to the motion must contain a concise statement of the material facts as to which the party contends a genuine issue does exist. Each fact in dispute must be numbered, must refer with particularity to those portions of the record upon which the opposing party relies, and must state the number of the movant's fact that is disputed. All material facts set forth in the statement of the movant will be deemed admitted unless specifically controverted."

Plaintiff's response to Defendant's statement of undisputed facts as required by this rule is set forth at pp. 6-9 in Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment (Docket No. 31). In addition to the statement in footnote one, Plaintiff additionally raised a genuine issue of material fact regarding what was comprehended by Defendant regarding her disability at the time she was fired. Namely, Plaintiff maintains Defendant was not aware of her long term disability at the time she was terminated. This assertion is made despite the fact that Plaintiff does not contest the fact that she was disabled at the time of her termination.

Once the movant meets its burden, the burden shifts to the non-moving party to demonstrate a genuine issue for trial on a material matter. *Thrifty Rent-A-Car Systems, Inc. v. Brown Flight Rental One Corp.,* 24 F.3d 1190, 1194 (10th Cir. 1994). Only material factual disputes preclude summary judgment; factual disputes about immaterial items are irrelevant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Affidavits or other evidence offered by a non-movant must create a genuine issue for trial; it is not enough that the evidence be "merely colorable" or anything short of "significantly probative" Id. at 249-50. This is because when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is "no genuine issue for trial"". *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (quoting, *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 289 (1968))

This is a diversity case brought pursuant to 28 U.S.C. §§ 1441 and 1446. Plaintiff's complaint outlines three claims for relief: (Count I) employment discrimination on the basis of Plaintiff's sex, national origin, and serious medical condition in violation of the New Mexico Human Rights Act; (Count II) breach of employment contract; and (Count III) wrongful discharge on the basis of her sex, national origin and serious medical condition in violation of the New Mexico Human Rights Act and also that Plaintiff was fired for having truthful communications with the New Mexico Air Quality Bureau. Defendant's response to these claims is that Plaintiff was discharged because she was totally disabled from working and provided no evidence she would ever be able to return to work.

**Count I**

Plaintiff outlines a claim for relief pursuant to the New Mexico Human Rights Act, alleging Defendant's stated reason for terminating her was pretextual, and its actual reason for doing so was discrimination based on Plaintiff's sex, national origin and serious medical condition. Plaintiff's complaint at ¶ 27. Plaintiff's claim fails because there is no question of fact that Plaintiff was 100% totally disabled from performing her job duties at the time she was terminated.

In *Kitchell v. Public Service Co. of New Mexico,* 972 P.2d 344 (N.M. 1998), the New Mexico Supreme Court addressed the issue of whether a totally disabled worker who was terminated by his employer could maintain an action pursuant to the New Mexico Human Rights Act. Justice McKinnon, in ruling on the interlocutory appeal, reversed the trial court's denial of defendant's summary judgment motion. The court focused on the requirement that plaintiff must show that she is "otherwise qualified" for employment

> whatever analysis is used, the [New Mexico Human Rights Act] requires that the plaintiff show he or she was "otherwise qualified" for the employment. . .
>
> The term "otherwise qualified" refers to a person, who though affected by a handicap or medical condition, maintains the underlying ability to do the job.

Id. at 346.

Just like the *Kitchell* case, there is no question of fact that Plaintiff was totally disabled at the time of her termination and, therefore, was not "otherwise qualified." Although Defendant may not have actually known Plaintiff was not "otherwise qualified"

at the time of her termination, they assumed she was unable to return to work since Plaintiff did not timely provide Defendant with her medical status information necessary for her continued employment.

### Count II

Plaintiff further alleges a breach of contract claim.  Plaintiff claims "the contractual relationship permitted employees. . .to take lengthy job-protected absences for medical reasons. . .and. . .that Plaintiff would be terminated only for good cause."  Plaintiff's complaint at ¶ 33.  Plaintiff alleges the contractual relationship exists because of representations made in "[d]efendant's official Team Member Handbook, its Policy and Procedures Manual and the totality of the circumstances of the employment relationship. . ."  Plaintiff's complaint at ¶ 32.

Plaintiff makes her argument that a contract exists despite the undisputed fact that all relevant employment documents disclaimed the existence of a contract and an acknowledgment by Plaintiff she was employed "at will."  In *Garrity v. Overland Sheepskin Co.,* 917 P.2d 1382, 1386 (1996), Chief Justice Frost quoting from *Hartbarger v. Frank Paxton Co.,* 857 P.2d 776, 779 (N.M. 1993) cert. denied, 510 U.S. 1118 (1994), outlined the manner in which an implied contract is created in the employment context.

> An implied contract is created only where an employer creates a reasonable expectation.  The reasonableness of expectations is measured by just how definite, specific, or explicit has been the representation or conduct relied upon.  Given the express reservation of the right to terminate an

**6**

> employee for any reason [the employer's] written personnel policy cannot be said to have created any reasonable expectation of an implied contract. [internal citation omitted]

Id. at 1385-86.

The *Garrity* case outlines the case before the court. Defendant not only explicitly stated there was no express or implied employment contract, but also clearly stated that Plaintiff's employment was "at will" and that no representative of Defendant had authority to make an agreement to the contrary. In light of these clear declarations that an employment contract does not exist and that Plaintiff's employment is "at will," Plaintiff's argument that an implied contract exists in relation to how she should be treated and that she could only be terminated for good cause is simply not supported in the record.

## Count III

Plaintiff's final count presents a confusing array of theories, alternative theories and vague references designed to outline a theory of wrongful discharge. The parties agree there are two wrongful discharge theories presented. First, Plaintiff re-argues she was discharged because "she was afflicted with a serious medical condition" and that she was discharged because she did not comply with "certain arbitrary standards for justifying illness-related absences" that were not equally applied to similarly situated males. Second, Plaintiff argues she was terminated in retaliation for what was thought to be a communication with a state agency that placed Defendant in a negative light (non-compliance with permit placement requirements).

As has been explained above, *Kitchell* requires that a plaintiff be "otherwise

7

qualified" to perform her job at the time of discharge.  It is not disputed that Plaintiff was "totally disabled" and completely unable to perform her job when she was terminated.  Therefore, any claim of discrimination must fail.

Plaintiff's wrongful discharge theory that she was terminated as retaliation for her possibly placing Defendant in a negative light is not supported in the record.  Plaintiff presented evidence of an angry exchange between her and her supervisor relating to a telephone call Plaintiff had with a state agency.  It is undisputed that Plaintiff provided no information to the agency; she simply relayed information to her supervisor.  The supervisor got angry with her for not handling the request for information appropriately.  Regardless of the appropriateness of Plaintiff's handling of the request for information, this factual scenario simply does not violate public policy.  See, *Vigil v. Arzola,* 699 P.2d 613, 619 (Ct. App. N.M. 1983).

**IT IS THEREFORE ORDERED** that Defendant Franklin Industries, Inc.'s Motion for Summary Judgment is granted.

**IT IS SO ORDERED.**

_____
RICHARD L. PUGLISI
United States Magistrate Judge
Sitting by designation


Herbert M. Silverberg, Esquire - Attorney for Plaintiffs
Charles Vigil, Esquire - Attorney for Defendant
Jeffrey L. Lowry, Esquire - Attorney for Defendant
Amy Badger Whittemore, Esquire - Attorney for Defendant